IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT GATTIS;
individually and on behalf of
all others similarly situated,
    Plaintiff,

    vs.

PERRY PHELPS, Warden,
Delaware Correctional
Center (DCC);
JAMES SCARBOROUGH,
Major, DCC;
KAREN HAWKINS,
Staff Lieutenant, DCC;
WILFORD BECKLES,
Sergeant, DCC,
    Defendants.

64

_____
Case Number

CIVIL COMPLAINT

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND
CONSOLIDATED MEMORANDUM OF LAW

Robert Gattis
SBI #188752   Bldg. 18
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: March 10, 2008

FILED
2008 MAR 18 AM 9:47

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT GATTIS,
individually and on behalf of
all others similarly situated,
        Plaintiff,

            VS.

PERRY PHELPS, Warden,
Delaware Correctional
Center (DCC);
JAMES SCARBOROUGH,
Major, DCC;
KAREN HAWKINS,
Staff Lieutenant, DCC;
WILFORD BECKLES,
Sergeant, DCC,
        Defendants.

Case Number _____

CIVIL COMPLAINT

NOTICE OF MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION AND
CONSOLIDATED MEMORANDUM OF LAW

    PLEASE TAKE NOTICE that the attached Motion for

Temporary Restraining Order and Preliminary Injunction

and Consolidated Memorandum of Law will be present-

ed at the Court's earliest convenience.

Dated: March 10, 2008

                    _____
                    Robert Gattis
                    SBI #188752-Bldg 18
                    Delaware Correctional Center
                    1181 Paddock Road
                    Smyrna, DE  19977

## I.    INTRODUCTION.

Plaintiff, Robert Gattis, was sentenced to death in October 1992, and housed among the general prison population until December 2000. Delaware's Department of Corrections (DOC), deciding it would establish a "death row" transferred the state's death sentenced inmate population in December 2000 to the newly constructed Security Housing Unit (SHU) building 18, A-tier, at the Delaware Correctional Center (DCC).

In this application, Plaintiff request preliminary injunctive relief from the alledged violations of his rights under the First and Eighth Amendments to the United States Constitution pursuant to Federal Rule of Civil Procedure 65. He claims a violation of his First Amendment right to receive incoming publications containing sexually explicit material, and an Eighth Amendment violation of his right to receive adequate outdoor exercise. Plaintiff specifically seeks a temporary restraining order to enjoin defendants as to his Eighth Amendment claim, pending the Court's final determination on this application for preliminary injunctive relief. He further seeks preliminary injunctive relief to enjoin defendants pending final adjudication on the merits of his Complaint.

Plaintiff's First Amendment claim alleges that DCC's restriction on incoming publications containing sexually explicit material, as applied to death row inmates, is not reasonably related to

legitimate penological interest. There is not a valid, rational connection between DOC Policy 4.5, and the asserted institutional interest, when applied to death row inmates on A-tier. DOC Policy 4.5 does not expressly prohibit sexually explicit material that is not otherwise contrary to law. The policy does however assign limited authority to facility wardens to reject incoming publications in specified instances. Plaintiff contends that his status as an indefinite administratively segregated inmate places him outside the sweep of the asserted institutional interests justifying the prohibition.

As death row inmates, A-tier prisoners are indefinitely confined under the highest security in Delaware's prison system. They are housed in single occupant cells, are mechanically restrained when leaving their cells, and not allowed contact with each other (not to mention non-death row prisoners). Additionally, death row prisoners are not subject to treatment or rehabilitation by the institution. These grounds appear to negate institutional security and rehabilitative goals as the asserted interests which make a ban necessary. In the absence of the required justification, the policy obliges admittance of incoming publications containing sexually explicit material.

In his Eighth Amendment claim, Plaintiff alleges the acts of defendants Hawkins, Beckles, and Scarborough operate alone and in combination to deprive A-tier inmates the identifiable human

2

need of adequate outdoor exercise.

For almost seven years A-tier inmates received recreation one hour (45 minutes of exercise and a 15 minute shower) per day, four days per week. Also during this period, inmates were permitted to await the availability of an outdoor recreation area, and take recreation following scheduled visits. Subsequent to the acts of defendants, the inmates on A-tier are limited to one hour of recreation per day, three days per week. Furthermore, they are compelled to take recreation indoors when the outdoor areas are in use, and no longer permitted recreation following scheduled visits. The defendants never put forward valid penological interest to justify the additional restrictions. As a consequence, death-row inmates are exposed to prolonged periods without outdoor exercise, and may never receive more than three days (2.25 hours) per week.

Plaintiff maintains that the result of defendants acts work to deprive A-tier inmates a basic human need which presents a significant risk to the psychological and physical well-being of A-tier inmates.

## II.    FACTUAL BACKGROUND.

### A. First Amendment Claim.

The Delaware Department of Corrections promulgated its revised Policy 4.5 regarding incoming publications on March 14, 2007. the policy gives facility wardens limited discretion to reject publica-

tions for two specified criterion: (1) they are determined a detriment to the security, good order, or discipline of the institution or may facilitate criminal activity, or otherwise prohibited by law; or (2) they are a threat to legitimate institutional interest. See DOC Policy 4.5 at 2, 4 (attached as an Exhibit to this Motion).

On March 26, 2007, then DCC Warden Thomas Carroll published a memorandum declaring that DCC's policy had not changed regarding incoming publications and sexually explicit material. The DCC policy for incoming publications and sexually explicit material is set forth in the inmate housing rules. Although the housing rules provide discriptive context for the term "sexually explicit material," it does not explain the determination that possession of sexually explicit material by Plaintiff is detrimental to security, good order, or discipline of the institution or might facilitate criminal activity.

DOC Policy 4.5 establishes three causes for rejection of incoming publications containing sexually explicit material: (1) that which is required to be rejected because it is contrary to law; (2) that for which a determination of harmfulness has been made; and (3) that which poses a threat to legitimate institutional interests. See DOC Policy 4.5 at 3-4. Just the same, the policy also states that sexually explicit material "may nonetheless be admitted if it **has** scholarly value, or general social or literary value." Id. at 4.

4

When rejecting incoming publications for sexually explicit material, DCC has provided that the objectionable material is "sexually explicit/obscene in nature" as the basis for finding them unacceptable. Following the initial rejections, an appeal to the Warden may be sought. _Id._ On appeal the Warden has sustained rejections asserting that the material is "not conducive to the good of rehabilitation," and "presents risks to institutional safety and security."

Plaintiff exhausted his only available administrative remedy where he filed an inmate grievance claiming that his possession of sexually explicit publications will not threaten the security, good order, or discipline of the institution. Plaintiff requested that he be permitted to receive sexually explicit publications. His grievance was rejected with a notation that DOC Policy 4.5 also prohibits sexually explicit material. Rejected grievances are not appealable.

B. Eighth Amendment Claim.

Plaintiff was transferred out of DCC's general prison population and into administrative segregation in December 2000. Plaintiff and Delaware's other death penalty inmates placed together on A-tier of building 18 in the newly opened SHU. Plaintiff does not expect that his institutional classification status will improve without a change in his legal situation. Therefore, it is his belief, he will remain confined on "death row" in SHU indefinitely.

Several weeks after opening SHU, then Unit Commander Captain Joseph Bellanger established the recreation schedule for A-tier. That schedule allowed each inmate to take outdoor recreation four days per week. This schedule remained in effect and unchanged until October 3, 2007.

On October 3, 2007, SHU Commander Karen Hawkins authorized a significant change to the operation of the recreation schedule for A-tier inmates. She authorized building 18 staff to compel A-tier inmates to recreate using the two indoor recreation areas when the outdoor areas are in use. This act by defendant Hawkins has reduced the opportunities for Plaintiff to take outdoor exercise.

Furthering the deprivation, on November 7, 2007 defendant Beckles informed Plaintiff following a scheduled visit that he would not receive the exercise portion of his recreation. When Plaintiff asked the reason for the change, defendant Beckles referenced the inmate housing rules. On November 16, 2007, Plaintiff spoke with Lieutenant Matthew Stevenson about defendant Beckles denial of recreation following visits. Lt. Stevenson stated that visits did not preclude recreation and he would address the issue with defendant Beckles. On November 17, 2007, Plaintiff was informed by defendant Beckles that the rule would continue to be enforced. This act by defendant Beckles works to additionally restrict Plain-

tiff's opportunities for outdoor exercise and exasperates the action of defendant Hawkines.

In addition, on November 13, 2007, defendant Scarborough issued a verbal directive to building 18 staff to cease providing A-Tier inmates Saturday recreation. As a result of defendant Scarborough's directive, A-Tier inmates are limited to a maximum three recreation days per week.

On October 5, 2007, Plaintiff filed an inmate grievance claiming that defendant Hawkines' authorized change contridicted the inmate housing rules and contrivened the United States Constitution. Plaintiff requested the change be found in violation of the inmate housing rules and that A-Tier inmates receive recreation in compliance with the United States Constitution. After not seeing signs of action regarding the October 5 grievance, Plaintiff wrote the inmate grievance office to inquire as to its status on December 18, 2007. In response, Plaintiff was informed that the office had no record of the October 5 grievance, but that it could be resubmitted. On December 22, 2007, Plaintiff resubmitted his October 5 grievance. The grievance was subsequently returned as a "request" with a notation that defendant Hawkines is following procedure. Plaintiff has exhausted the only available administrative remedy.

## II. ARGUMENT.

Plaintiff's civil rights Complaint alleges, among other things, that he has been denied his free speech rights under the First Amendment, and right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. Plaintiff seeks permanent injunctive relief on these claims within his Complaint. However, in the present application Plaintiff request preliminary injunctive relief pending full adjudication on the merits of his Complaint to enjoin the enforcement of: (a) defendant Phelps' restriction on incoming publications containing sexually explicit material that are addressed to death row inmates; (b) defendant Hawkins' authorization for building 18 staff to compel A-tier inmates to take indoor recreation when the outdoor areas are in use; (c) defendant Beckles' practice that denies recreation to A-tier inmates following scheduled visits; and (d) defendant Scarborough's verbal directive instructing building 28 staff to no longer provide A-tier inmates Saturday recreation.

Plaintiff asserts that he is likely to succeed on the merits of his request for permanent injunction. Plaintiff declares also that without the Court's granting of the instant motion he will likely suffer irreparable harm. The granting of temporary and preliminary injunctive relief will have neutral public interest implications.

## A. The Legal Standard Governing Preliminary Injunctive Relief.

Plaintiff declares he is able to satisfy the four-part standard governing motions for preliminary injunction or temporary restraining order. "The standard for evaluating a motion for preliminary injunction is a four-part inquiry, requiring the moving party to show: (1) a reasonable probability of success on the merits; (2) irreparable injury if preliminary relief is not granted; (3) granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) preliminary relief will be in the public interest." United States v. Bell, 414 F.3d 474, 478 n.4 (3d Cir. 2005).

"The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate." P.C. Yonkers, Inc. v. Celebrations the Party and Seasonal Superstore, LLC, 428 F.3d 504, 508 (3d Cir. 2005). However, the necessary showing of likelihood of success diminishes in proportion to the "relative hardship to the party seeking the preliminary injunction." Beardslee v. Woodford, 395 F.3d 1164, 1167-68 (9th Cir. 2005). Where the balance of the hardships tips sharply in favor of the Plaintiff, he need demonstrate only the existence of serious questions going to the merits. Id.

Plaintiff now explains how he fulfills each of the four components articulated in U.S. v. Bell.

9

B. Plaintiff is Likely to Succeed on the Merits.

The Plaintiff's Complaint alleges significant and on going violations of his rights under the United States Constitution. Plaintiff submits he will prevail on the merits.

1. Plaintiff's Claims are Cognizable Under Section 1983.

Plaintiff's Complaint is properly before this Court as a civil rights action under Section 1983. To bring a claim under Section 1983, Plaintiff must allege, first, a violation of a right protected by the Constitution or Federal law, and Second, that the right will be or is being violated by an individual acting under color of state law. 42 U.S.C. § 1983.

2. Constitutional Violations.

Both the First Amendment's guarantee of freedom of speech and the Eighth Amendment's prohibition against the imposition of cruel and unusual punishments are applicable to the states through the Fourteenth Amendment of the United States Constitution.

a. The Application of DOC Policy 4.5 to Plaintiff Violates His First Amendment Rights.

On First Amendment claims this Circuit has held fast to the Supreme Court's cautionary reminder that "prison walls do not form a barrier separating prison inmates from the protections of the Constitution." Banks v. Beard, 399 F.3d 134, 139 (3d Cir. 2005); Ramirez v. Pugh, 379 F.3d 122, 126 (3d Cir. 2004); Fraise v. Terhune, 283 F.3d 506, 515 (3d Cir. 2002) (quoting Turner v. Safley, 482

U.S. 78, 107 S.Ct. 2254 (1987). Prisoners do, however, retain their First Amendment right to free speech so long as it is "not inconsistent with [their] status as prisoner[s] or with the legitimate penological objectives of the corrections system." Hudson v. Palmer, 468 U.S. 517, 523, 104 S.Ct. 3194 (1984) (quoting Pell v. Procunier, 417 U.S. 817, 822, 94 S.Ct. 2800 (1974). In Turner the Supreme Court acknowledged that the constitutional rights of inmates may be limited in some instances, when it declared that a prison regulation encroaching upon an inmate's constitutional rights "is valid if it is reasonably related to legitimate penological interest." Id., 482 U.S. at 89, 107 S.Ct. 2254.

The Turner Court set forth four factors from which reasonableness of a particular regulation can be assessed for constitutional validity. The Turner factors are: (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether alternative means of exercising the right in question remain open to inmates; (3) the impact accommodating of the asserted prisoner right will have on the prison generally; and (4) whether there is an absence of ready alternatives. Id., U.S. at 89-90, 107 S.Ct. 2254.

i.  Likelihood of Success on the Merits.

The Court of Appeals for this circuit has applied Turner's analysis in two distinct steps. The first step requires a determination that there is a "valid, rational connection" between

the prison policy and legitimate governmental interest put forward to justify it, prior to assessing the remaining three Turner factors. See Jones v. Brown, 461 F.3d 353, 360 (3d Cir. 2006). It is only upon determining the existence of such a rational relationship that a Court may initiate the second step, and assess the remaining three Turner factors. Id. As challenger, Plaintiff has the burden of persuasion that the policy is unreasonable and fails step one of the Turner analysis. Id. However, the policy's champion is required to present legitimate governmental interest justifying the policy and demonstrate that the policy maker could have seen a rational connection between the policy and asserted interest. Id.

Plaintiff maintains that death row inmates are exempt from the stated causes for rejection put forward by the institution, due to their status as indefinite administratively segregated prisoners. Because Plaintiff is housed in SHU, on a cellblock of single occupant cells with other death penalty inmates, there are no relevant security, rehabilitative or disciplinary implications to prevent the exercise of his First Amendment rights. Cf. Hudson, 468 U.S. at 523, 104 S.Ct. 3194. See also Ramirez, 379 F.3d at 131 ("relevant to this inquiry is whether those prisoners are housed separately from inmates whose rehabilitation would be affected.").

By segregating death penalty inmates together on A-tier in SHU, the DOC has attenuated the institutional claims of rehabil-

itative goals and security as valid interests to justify the restriction. (It is unclear to Plaintiff why publications containing sexually explicit material pose a greater threat to institutional security than publication judged **acceptable**.) The level of security and the degree of isolation existent in SHU prevents A-tier inmates from giving items of any kind to inmates whose rehabilitation would be affected. Additionally, as death row prisoners A-tier inmates are not provided nor required to participate in employment, treatment or rehabilitative programing by the institution.

In _Ramirez_ the Court found that identifying rehabilitation as a legitimate penological interest is insufficient to satisfy _Turner_'s first prong without adequately describing the specific rehabilitative objectives to be advanced by the restriction on sexually explicit materials. _Id._ 379 F.3d at 128. The Court reasoned that a connection between the asserted interest of rehabilitation and the regulation appear obvious applied to sex offenders for example, but, nevertheless, attenuate when applied to other segments of the prison population. _Id._ Plaintiff's First Amendment rights are not open to the whims of his caretakers. Accordingly, when rehabilitation is put forward as the legitimate penological interest, _Turner_ requires the rehabilitative objectives be explained with sufficient precision to facilitate a conclusion on the validity of the rationale connecting the asserted interests with the restriction. _Id._

Evidenced by their sentences, death row prisoners are adjudg-

ed to lack rehabilitative merit, and do not receive treatment or reha-
bilitative consideration from the institution. Therefore, as applied to
A-tier inmates, the connection between the restriction on incoming
publications containing sexually explicit material and the insti-
tutional interest put forward in justification "is so remote as to
render [it] arbitrary or irrational." Id., at 130 (quoting Turner, 482
U.S. at 89-90, 107 S.Ct. 2254).

Turner's third factor requires an evaluation to address any
adverse effect accomodation will have on other prisoners or prison
staff, and the allocation of prison resources. Id. 482 U.S. at 90, 107
S.Ct. 2254. Plaintiff asserts that accommodation of his First
Amendment right will not adversely impact other prisoners or pri-
son staff. As stated above, Plaintiff's segregated status obviates
any adverse impact on inmates whose rehabilitation would be affect-
ed nor would prison staff be impacted, and require no additional
prison resources. Therefore, the accommodation of Plaintiff's First
Amendment right will not impact nor have a significant "rip-
ple effect" on other prisoners or prison staff.

The final Turner factor examines whether obvious, easy alter-
native exist to the regulation that can fully accommodate Plaintiff's
right at de minimis cost to valid penological interests. Id. 482 U.S.
at 90-91, 107 S.Ct. 2254. Because Plaintiff contends his status as a
segregated prisoner invalidates the institutional interests asserted to
justify the restriction, there is no need for alternative means of accom-

modation. However, defendant Phelps need only advise prison mailroom staff to forward incoming publications containing sexually explicit material (not otherwise precluded) to inmates housed on A-tier, building 18 of SHU. There are currently fewer than 20 death row inmates and, if necessary, their names could be listed as "authorized" and posted for mailroom staff. Accordingly, the accommodation of Plaintiff's First Amendment right would be at de minimus cost, notwithstanding the unmistakable absence of valid institutional interest to justify the restriction.

ii. Irreparable Harm.

The second prong of Federal Rule of Civil Procedure 65 requires Plaintiff show irreparable harm should injunctive relief not be granted. "To show irreparable harm, the party seeking injunctive relief must at least demonstrate 'that there exist some cognizable danger of recurrent violation' of its legal rights." Anderson v. Davila, 125 F.3d 148, 164 (3d Cir. 1997) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894 (1953). See also Adams v. Freedom Forge Corp., 204 F.3d 475 (3d Cir. 2000) ("The irreparable harm requirement is met if a plaintiff demonstrates a significant risk that he or she will experience harm that cannot adequately be compensated after the fact by monetary damages."). Id., at 484-85. As previously stated, shortly after promulgation of the revised Doc Policy 4.5 defendant Phelps' predecessor, Warden Thomas Carroll, published a memorandum asserting that DCC's policy regarding sex-

ually explicit material had not changed. Furthermore, when Plaintiff administratively grieved the matter he was told that DOC Policy 4.5 also prohibits sexually explicit material. Most recently, defendant Phelps denied Plaintiff's appeal submitted February 4 regarding the rejection of a January 2008 issue of "Playboy" magazine on February 13, 2008. (Contrary to DOC Policy 4.5 Plaintiff's inmate grievance of the appeal was returned as "nongrievable.") Therefore, without the granting of injunctive relief by this Court, it is highly probable that defendant Phelps will continue to enforce the current prohibition. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct 2673 (1976).

### iii. Balance of Hardships.

The balance of hardships tips sharply in Plaintiff's favor. Through his request for permanent injunctive relief, Plaintiff seeks to exercise his First Amendment right without unwarranted restriction. As death penalty prisoners the limits of time are even more pronounced. Cf. Abu-Jamal v. Price, 154 F.3d 128 (3d Cir. 1998) (Importantly, Jamal is a condemned man, whose only time to speak and write is now."). Id. at 136. Absent the requested relief, Plaintiff will likely suffer additional deprivation of his right that cannot adequately be compensated after the fact by monetary damages. Defendant, however, will suffer little if any harm should

16

Plaintiff receive requested injunctive relief.

### iv. Public Interest.

The grant of preliminary relief will not have any public interest ramifications. Security is no less protected, crime is no less deterred, retribution is not undermined, and rehabilitation is not hindered by the exercise of Plaintiff's First Amendment rights. See Monmouth County Correc. Inst. Inmates v. Lanzaro, 834 F.2d 326, 338 (3rd Cir. 1987).

### v. Conclusion.

For the reasons stated above the Court should issue an order for defendant Phelps to show why preliminary relief on this claim is inappropriate and establish a briefing schedule, so a hearing on this motion can be conducted.

### b. Plaintiff Has Been Deprived the Minimal Civilized Measure of Life's Necessities in Violation of the Eighth Amendment.

Plaintiff challenges the conditions of his confinement as an administratively segregated death row inmate. To succeed on a claim that conditions of confinement violate the Eighth Amendment, Plaintiff must satisfy two criteria: first, the conditions alleged must be sufficiently serious in a manner that the prison officials' acts or omissions results in a denial of "the minimal civilized measure of life's necessities"; and second, the prison officials responsible for the conditions must "exhibit indifference" to Plain-

tiff's health or safety. Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970 (1994); see also Woloszyn v. County of Lawrence, 396 F.3d 314, 320 (3d Cir. 2005).

Plaintiff avers that the mutual enforcing effect of defendants Hawkins', Beckles', and Scarborough's acts have produced the deprivation of adequate outdoor exercise, an identifiable human need. See Wilson v. Seiter, 501 U.S. 294, 304, 111 S.Ct. 2321 (1991) (comparing Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) ("outdoor exercise required when prisoners otherwise confined in small cells almost 24 hours per day."); see also Peterkin v. Jeffes, 855 F.2d 1021, 1031 (3d Cir. 1988) ("There is no question that meaningful recreation 'is extremely important to the psychological and physical well-being of the inmate.'")) (quoting Spain, 600 F.2d at 199). When affirming the district court's ruling, the Spain Court found it unnecessary to declare a per se violation of the Eighth Amendment whenever prisoners are deprived outdoor exercise. Instead, the Court ruled — in agreement with the district court — that prisoners in segregated confinement for a period of years were entitled to a minimum one hour outdoor exercise five days a week, unless inclement weather, unusual circumstances or disciplinary needs mak it impossible. See Spain, 600 F.2d at 199; see also Keenan v. Hall, 83 F.3d 1082, 1089 (9th Cir. 1996) ("[d]eprivation of outdoor exercise violates the Eighth Amendment rights of inmates confined to continuous and long term segregation"). Therefore, Plaintiff has alleged a sufficiently serious deprivation

18

as required to fulfill the objective component of an Eighth Amendment claim. See _Farmer_, 511 U.S. at 834.

To establish the subjective component of deliberate indifference, Plaintiff must demonstrate that prison officials knew of but disregarded plaintiff's plight. _Id._, 511 U.S. at 837; see _also_ _Woloszyn_, 396 F.3d at 321. To meet his burden, Plaintiff need only show that prison officials acted or failed to act despite their knowledge of the deprivation. Cf. _Beers-Capital v. Whetzel_, 256 F.3d 120, 131 (3d Cir. 2001) (quoting _Farmer_, 511 U.S. at 842).

In a sequence of events commencing with defendant Hawkins' October 3, 2007 memorandum authorizing building 18 staff to reduce the opportunities for A-tier inmates to receive outdoor exercise; which was then exasperated by defendant Beckles' denial of recreation following visits (which began November 7, 2007); and culminated with defendant Scarborough's November 27, 2007 verbal directive eliminating an entire day from A-tier's recreation schedule. As a direct result of these intentional actions, Plaintiff now receives a maximum one hour per day (45 minutes for exercise and 15 minutes to shower) recreation period, three days per week.

The defendants' actions have caused the opportunities for Plaintiff to receive outdoor exercise to range from zero to three times per week. For instance, during the month of December 2007, Plaintiff received outdoor exercise a total of four days. During the week of December 3, Plaintiff was required to exercise indoors on the 3rd and 5th,

and denied recreation on the 7th following a scheduled visit. The week of December 10, he was compelled to exercise indoors on the 10th, refused recreation on the 12th after a scheduled visit, and received outdoor exercise on the 14th. The week of the 17th, Plaintiff was forced to exercise indoors on the 17th and 19th, but able to exercise outdoors on the 21st. Finally, between the 24th and 31st, Plaintiff was compelled to exercise indoors the 24th and 31st, and permitted to take outdoor exercise the 26th and 29th.

By no means can it be said that any of the named defendant prison officials were unaware the functional effect their individual act would have upon Plaintiff's recreation. In particular, defendants Hawkins and Beckles communicated directly with Plaintiff concerning the specific impact that would result. Nevertheless, having the benefit of seeing the practices at work and the restrictive effect, not one of the defendants has acted to mitigate the deprivation. Therefore, it is only logical to conclude that the intent of the defendants' actions, both individually and in combination, show deliberate indifference to Plaintiff's need for outdoor exercise.

## i. Irreparable Harm.

The second prong of Federal Rule of Civil Procedure 65 requires a plaintiff demonstrate irreparable harm absent the granting of injunctive relief. In <u>Anderson v. Davila</u> the Court held that preliminary injunctive relief will not be forthcoming unless a plaintiff is able to show a genuine and instant threat to his rights. <u>Id.</u>, 125 F.3d 148,

164 (3d Cir. 1997). Presently, Plaintiff will continue to suffer the irreparable harm he has experienced since October 3, 2007 should this Court not enjoin the enforcement of defendant Hawkins' October 3, 2007 memorandum; defendant Beckles' practice of denying recreation following scheduled visits (which began November 7, 2007); and defendant Scarborough's November 27, 2007 verbal directive.

Absent inclement weather, unusual circumstances or disciplinary needs that make it impossible, Plaintiff is entitled to outdoor exercise at least one hour per day, five days per week. See Spain, 600 F.2d at 189. The violation of Plaintiff's Eighth Amendment rights in itself should suffice to produce the prerequisite presumption of irreparable harm.

### ii. Balance of Hardships Favor Plaintiff.

The balance of hardships tips sharply in Plaintiff's favor. By requesting preliminary injunctive relief, Plaintiff merely seeks to re-establish the status quo while attempting to fully vindicate his right to be free from cruel and unusual punishment. Without the requested injunctive relief Plaintiff will endure additional deprivation until his claims are fully adjudicated. In contrast, defendants will suffer little, if any, harm should preliminary injunctive relief be granted. There have not been any penological justifications offered by any defendant to validate the additional restrictions.

### iii. Public Interest.

The grant of preliminary relief will not implicate any public interest.

## IV. Conclusion.

The magnitude of the disparity between the constitutionally minimal required amount of outdoor exercise and the maximum amount Plaintiff and other death row prisoners may currently receive is substantial. The import of this gap is further exasperated by the high likelihood that A-tier inmates could go extended periods without outdoor exercise. The gravity of the contrast presented should suffice to confirm an amply serious deprivation of the minimal civilized measure of a life necessity. The Eighth Amendment requires regular outdoor exercise when prisoners are indefinitely segregated for a period of years and confined to their cells almost 24 hours a day.

Therefore, the Court should issue an order to temporarily restrain enforcement of: (a) Staff Lieutenant Karen Hawkins' October 3, 2007 authorization for building 18 staff to compel A-tier inmates to take indoor exercise when outdoor areas are in use; (b) Building 18 Sergeant Wilford Beckles' practice of denying recreation to A-tier inmates for reasons other than inclement weather, unusual circumstances or disciplinary needs making it impossible; and Major James Scarborough's directive for building 18 staff to cease providing A-tier inmates Saturday recreation. The result of such an order would serve to only re-establish the previous status quo,

pending the Court's final adjudication of the present application for preliminary relief.

The Court should also issue an order for defendants Hawkins, Beckles, and Scarborough to show why preliminary relief on this claim is inappropriate and establish a briefing schedule, so a hearing on this motion can be conducted.

## IV. CONCLUSION.

Plaintiff specifically request this Court issue an order temporarily restraining defendants from continued enforcement of:

1. Defendant Karen Hawkins' October 3, 2007 authorization for SHU, building 18 staff to compel A-tier inmates to exercise indoors when outdoor recreation areas are in use;

2. Defendant Wilford Beckles' practice of denying A-tier inmates recreation for reason other than inclement weather, unusual circumstances or disciplinary needs making it impossible; and

3. Defendant James Scarborough's directive prohibiting SHU, building 18 staff from providing A-tier inmates Saturday recreation.

Plaintiff has provided the necessary legal rationale within his Motion for Preliminary Injunction and Memorandum of Law to support the Court's granting temporary relief pending its final adjudication of Plaintiff's preliminary relief motion.

Plaintiff further seeks an order directing defendants to show why the Court should not issue a preliminary injunction on the claims set forth herein.

Plaintiff has notified defendants' attorney concerning this motion when he caused a true and correct copy to be delivered via United States mail.

Accordingly, Plaintiff request this Court grant a hearing on this Motion for preliminary relief.

Respectfully Submitted,

Robert Gattis
SBI # 188752   Bldg. 18
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: March 10, 2008

FILED
CLERK U S DISTRICT COURT
DISTRICT OF DELAWARE
2008 MAR 18  AM 9: 47

5 4

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

ROBERT GATTIS;
individually and on behalf of
all others similarly situated,
      Plaintiff,

    vs.

PERRY PHELPS, Warden,
Delaware Correctional
Center (DCC);
JAMES SCARBOROUGH,
Major, DCC;
KAREN HAWKINS,
Staff Lieutenant, DCC;
WILFORD BECKLES,
Sergeant, DCC,
      Defendants.

Case Number

_____

CIVIL COMPLAINT

EXHIBITS TO PLAINTIFF'S MOTION FOR PRELIMINARY
INJUNCTION AND CONSOLIDATED MEMORANDUM OF LAW

1. Inmate Grievances and Letters.
2. Delaware Department of Corrections Policy 4.5 "Incoming Publications."
3. Delaware Correctional Center Inmate Housing Rules FOR Maximum Security "Personal Items" pages 5-7.
4. Delaware Correctional Center's Publication Rejection "Notice" and "Appeal Denial" documents.
5. Defendant Hawks' October 3, 2007 Memorandum.
6. A-Tier Recreation Schedule diagram.

FORM #584

GRIEVANCE FORM

FACILITY: _Del. Correctional Center_    DATE: _June 25, 2007_

GRIEVANT'S NAME: _Robert Gattis_    SBI#: _188752_

CASE#: _126883_    TIME OF INCIDENT: _N/A_

HOUSING UNIT: _SHU - Bldg 18_

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

_Currently I am housed in SHU building 18 tier-A and confined under policies virtually indistinguishable from those inmates housed in SHU for disciplinary administrative segregation. In the Inmate Housing Rules For Maximum Security At Delaware Correctional Center, there is only a single distinction made for "death penalty" inmates. That distinction is under Section XXIII Commissary, which includes listings of four (4) quality of life levels (1-4); death penalty; protective custody; and detentioners. Consequently, "death penalty" inmates are confined under conditions in violation of the U.S. Constitution._

ACTION REQUESTED BY GRIEVANT: _That the Inmate Housing Rules be modified to provide "death penalty" inmates housed in administrative non-disciplinary segregation with privileges necessary to bring their confinement into constitutional compliance._

GRIEVANT'S SIGNATURE: _[signature]_    DATE: _June 25, 2007_

WAS AN INFORMAL RESOLUTION ACCEPTED?    _____(YES)    _____(NO)

RECEIVED
JUN 27 2007
...... Grievance Office

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____    DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

A L 11

FORM #584

GRIEVANCE FORM

FACILITY: Del. Corr. Center          DATE: August 21, 2007

GRIEVANT'S NAME: Robert Gattis          SBI#: 188752

CASE#: 139935          TIME OF INCIDENT: On Going

HOUSING UNIT: Bldg. 18

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED IN THE INCIDENT OR ANY WITNESSES.

The institution's policy prohibiting sexually explicit publications, as stated in the Inmate Housing Rules, p. 6, dated June 8, 2005 violates my First Amendment right under the United States Constitution and Department of Correction's (DOC) Policy for Incoming Publications. According to DOC Policy 4.5 a publication may be rejected by the Warden "only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." My possession of these publications will not threaten the security, good order, or discipline of the institution, nor facilitate any criminal activity.

ACTION REQUESTED BY GRIEVANT: That I be permitted to exercise my First Amendment right to receive sexually explicit publications.

GRIEVANT'S SIGNATURE: _____          DATE: August 21, 2007

WAS AN INFORMAL RESOLUTION ACCEPTED? _____(YES) _____(NO)

RECEIVED
AUG 2 2 2007
Inmate Grievance Office

(COMPLETE ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE: _____          DATE: _____

IF UNRESOLVED, YOU ARE ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

ALI

**FORM  #584**

**GRIEVANCE FORM**

FACILITY: Del. Correc. Center                                   DATE: December 22, 2007/ *Originally Submitted October 5, 2007*

GRIEVANT'S NAME: Robert Gattis                  SBI#: 188752

CASE#: 147746                                    TIME OF INCIDENT: _____

HOUSING UNIT: SHU Bldg. 18

BRIEFLY STATE THE REASON FOR THIS GRIEVANCE. GIVE DATES AND NAMES OF OTHERS INVOLVED
IN THE INCIDENT OR ANY WITNESSES.

One October 3, 2007, S/Lt. Hawkins posted a memorandum authorizing
building 18 staff to compel A-tier inmates to recreate using the indoor
recreation areas when the outside yards are occupied. The practical
effect of this change will serve to limit the number of opportun-
ities for outdoor recreation each week. The Housing Rules for
Maximum Security, June 8, 2005, at page 11, provides that exer-
cise periods be at least 3 days per week and that the yard may
be utilized during fair weather. Furthermore, the United States
Constitution requires that I receive at least one hour of exercise
five days per week. One October 5, 2007 I addressed the change
with S/Lt. Hawkins on A-tier, building 18.

ACTION REQUESTED BY GRIEVANT: That S/Lt. Hawkins' change be found to
violate the applicable Housing Rule and that inmates housed on A-tier,
building 18 receive exercise in accord with the U.S. Constitution.

_____

GRIEVANT'S SIGNATURE: _____     DATE: December 22, 2007

WAS AN INFORMAL RESOLUTION ACCEPTED?         _____(YES)    _____(NO)

(COMPLETE  ONLY IF RESOLVED PRIOR TO HEARING)

GRIEVANT'S SIGNATURE:_____         DATE:_____

IF UNRESOLVED, YOU ARE  ENTITLED TO A HEARING BY THE RESIDENT GRIEVANCE COMMITTEE.

cc: INSTITUTION FILE
    GRIEVANT

April '97 REV

DCC  Delaware Correctional Center                    Date: 02/26/2008
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

## GRIEVANCE REPORT

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : GATTIS, ROBERT A | SBI# : 00188752 | Institution : DCC |
| Grievance # : 151925 | Grievance Date : 02/15/2008 | Category : Individual |
| Status : Non Grievable | Resolution Status : | Resol. Date : |
| Grievance Type: Mail | Incident Date : 02/15/2008 | Incident Time : |
| IGC : Dutton, Matthew | Housing Location : Bldg 18, Lower, Tier A, Cell 11, Single | |

### OFFENDER GRIEVANCE DETAILS

Description of Complaint:  In accordance with DOC Policy 4.5, I now seek redress via the inmate grievance procedure following DCC Warden Phelps' denial of my February 4, 2008 rejected publication appeal. I grieve the rejection of my January 2008 issue of "Playboy" magazine are three grounds: 1. My protected right under the First Amendment requires that the specific rehabilitative goals be identified with particularity before the governmental restriction can by justified (as a death row prisoners there are no valid rehabilitative objectives to consider); 2. DOC policy 4.5 authorizes admittance of sexually explicit material that has "several social or liberty value"; and 3. My status as a death row prisoner, separated from those whose rehabilitation will be impacted nullities any security considerations.

Remedy Requested  :  That my first amendment right remain intact by allowing me to receive my January 2008 issue of "Playboy" magazines.

### INDIVIDUALS INVOLVED

| Type | SBI # | Name |
|---|---|---|
| | | |

### ADDITIONAL GRIEVANCE INFORMATION

| | |
|---|---|
| Medical Grievance : NO | Date Received by Medical Unit : |
| Investigation Sent : | Investigation Sent To : |
| Grievance Amount : | |

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 02/26/2008

## INFORMAL RESOLUTION

| OFFENDER GRIEVANCE INFORMATION | | |
|---|---|---|
| Offender Name : GATTIS, ROBERT A | SBI#        :  00188752 | Institution    : DCC |
| Grievance #    : 151925 | Grievance Date  : 02/15/2008 | Category       : Individual |
| Status          : Non Grievable | Resolution Status: | Inmate Status : |
| Grievance Type: Mail | Incident Date      : 02/15/2008 | Incident Time : |
| IGC            : Dutton, Matthew | Housing Location :Bldg 18, Lower, Tier A, Cell 11, Single | |

INFORMAL RESOLUTION

Offender's Signature:_____

Date                    :_____

Witness (Officer)    :_____

DCC  Delaware Correctional Center
Smyrna Landing Road
SMYRNA DE, 19977
Phone No. 302-653-9261

Date: 02/26/2008

## GRIEVANCE INFORMATION - IGC

### OFFENDER GRIEVANCE INFORMATION

| | | |
|---|---|---|
| Offender Name : GATTIS, ROBERT A | SBI# : 00188752 | Institution : DCC |
| Grievance # : 151925 | Grievance Date : 02/15/2008 | Category : Individual |
| Status : Non Grievable | Resolution Status : | Inmate Status : |
| Grievance Type: Mail | Incident Date : 02/15/2008 | Incident Time : |
| IGC : Dutton, Matthew | Housing Location : Bldg 18, Lower, Tier A, Cell 11, Single | |

### IGC

Medical Provider:                              Date Assigned

Comments:

This grievance returned because:  Non-Grievable: Policy 4.5 was followed.

[ ] Forward to MGC          [ ]  Forward to Medical Provider          [ ]  Warden Notified

[ ] Forward to RGC          Date Forwarded to MGC :

[ ] Offender Signature Captured          Date Offender Signed          :

**DCC  Delaware Correctional Center**
**Smyrna Landing Road**
**SMYRNA DE, 19977**
**Phone No. 302-653-9261**

Rec. 8.3.01

July 1, 2001

Dear Officer Merson:

I received your memorandum dated June 22, 2001 rejecting my June 18, 2001 grievance.

I would like to effect an appeal and therefore request that you forward the necessary information and forms for that purpose.

CC: FILE

Thank you,

Robert Gattis
#188752
Bldg. 18 (A-L-11)

only accepted grievances can be appealed, But feel free to Write to D/W Beurris. She's my Supervisor. Merson

December 18, 2007

Dear Cpl. Dutton:

I would like to inquire the status of my October 5, 2007 inmate grievance. In the past any rejected grievances have been returned with a notation explaining the reason for the rejection. To date, I am aware of no action being taken regarding my October 5 grievance.

Thank you for your time and consideration in this matter.

RECEIVED
DEC 19 2007
IM GRIEVANCE OFFICE

Sincerely your's

Robert Gattis
#188752
Bldg. 18 - 1A-L-11

The last grievance I have from you on record is 8/21/07 dealing with mail that was marked  N/o,N/ - fas vable. due not see one for 10/5/07 You may have



EXHIBIT 2

| POLICY OF<br><br>STATE OF DELAWARE<br><br>DEPARTMENT OF CORRECTION | POLICY NUMBER<br>4.5 | PAGE NUMBER<br>1 of 5 |
|---|---|---|
| | RELATED ACA STANDARDS: | |
| CHAPTER: 4 Decision-Making to Offenders | SUBJECT: Policy for<br>Incoming Publications | |
| APPROVED BY THE COMMISSIONER: | | |
| EFFECTIVE DATE: | 14 March 200? | |
| APPROVED FOR PUBLIC RELEASE | | |

**I. AUTHORITY:** 11 Del. C. 6517, 29 Del. C. 8903      **SHU LAW LIBRARY**

**II. PURPOSE:** It is the Department of Correction's policy to promote education and literacy amongst the inmate population. Traditionally, the overall education level possessed by the inmate population has lagged far behind the non-incarcerated public. There have been many studies which link recidivism to a lack of proper education. Accordingly, it is essential to provide inmates a wide range of choice and variety of reading materials to foster interest in reading, education, and personal betterment. It is the Department of Correction's hope that access to reading materials may foster the inmate's desire to learn.

The Department of Correction, however, must provide safe and secure correctional facilities within the State of Delaware. Certain incoming publications are detrimental to the security, good order, or discipline required within the correctional setting. This policy addresses the method for decision-making related to the topic of incoming inmate publications.

Except when precluded by statue or court order, the Department of Correction (DOC) permits an inmate to subscribe to or to receive publications without prior approval and has established procedures to determine if an incoming publication is detrimental to the security, discipline, or good order of the institution or if it might facilitate criminal activity.

The term publication, as used in this policy, means a book, booklet, pamphlet, or similar document, or a single issue of a magazine, periodical, newsletter, newspaper, plus such other materials addressed to a specific inmate such as advertising brochures, flyers, and catalogs.

Publications determined detrimental to the security, good order, or discipline of the institution or that may facilitate criminal activity, or are otherwise prohibited by law, will be excluded from DOC facilities.

**SHU LAW LIBRARY**

| POLICY OF | POLICY NUMBER | PAGE NUMBER |
|---|---|---|
| STATE OF DELAWARE | 4.5 | 2 of 5 |
| DEPARTMENT OF CORRECTION | RELATED ACA STANDARDS: | |
| CHAPTER: 4 Decision-Making to Offenders | SUBJECT: Policy for Incoming Publications | |

A safer environment for staff and inmates will be provided by strengthening procedures designed to prevent the introduction of contraband.

**SHU LAW LIBRARY**

**III. APPLICABILITY:** This policy is applicable to all DOC Staff, Contractors, Volunteers, Offenders and/or Inmates under DOC's custody.

**V: POLICY:** DOC institutions, an inmate may receive publications and newspapers only from the publisher, from a book club, or from bookstore.

The sender's address shall be clearly identified on the outside of the package.

The Warden may permit an inmate to obtain a publication from another source if the publication is no longer available from the publisher, book club, or bookstore. The Warden shall require that the inmate provide written documentation that the publication is no longer available from these sources. The approval of any request for an exception is to be documented in writing.

The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity. The Warden may not reject a publication solely because its content is religious, philosophical, political, and social or because its content is unpopular or repugnant. Publications, which may be rejected by a Warden, include, but are not limited to, publications, which meet one of the following criteria:

    a.  It depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;

    b.  It depicts, encourages, or describes methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of DOC institutions.

    c.  It depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;

    d.  It is written in code;

| POLICY OF | POLICY NUMBER | PAGE NUMBER |
|---|---|---|
| STATE OF DELAWARE | 4.5 | 3 of 5 |
| DEPARTMENT OF CORRECTION | RELATED ACA STANDARDS: | |
| CHAPTER: 4 Decision-Making to Offenders | SUBJECT: Policy for Incoming Publications | |

e.  It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;

f.  It encourages or instructs in the commission of criminal activity;

g.  It is sexually explicit material, which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.

Only the Warden/ Warden's designee may reject an incoming publication.  In the Warden's absence, only the Warden's designee may perform this function.

To assist staff in determining which materials may pose the type of threat, which warrants exclusion, the following guidelines are given.

1.  A Warden may determine that sexually explicit material of the following types is to be excluded, as potentially detrimental to the security and good order, or discipline of the institution, or as facilitating criminal activity:

   o  Sado-masochistic
   o  Bestiality
   o  Involving children

**SHU LAW LIBRARY**

2.  Additionally:

   ▪  The Warden must prohibit a sexually explicit publication if it is determined to pose a threat to the institution or is contrary to law.  Child pornography materials, which are prohibited by law, are examples.

| POLICY OF | POLICY NUMBER | PAGE NUMBER |
|---|---|---|
| STATE OF DELAWARE | 4.5 | 4 of 5 |
| DEPARTMENT OF CORRECTION | RELATED ACA STANDARDS: | |
| CHAPTER: 4 Decision-Making to Offenders | SUBJECT: Policy for Incoming Publications | |

- Sexually explicit material does not include material of a news or information type. Publications concerning research or opinions on sexual, health, or reproductive issues, or covering the activities of gay rights organizations or gay religious groups, for example, should be admitted unless otherwise a threat to legitimate institution interests.

- Literary publications should not be excluded, solely because of homosexual themes or references, if they are not sexually explicit in a manner, which threatens legitimate institution interests. **SHU LAW LIBRARY**

- Sexually explicit material may nonetheless be admitted if it has scholarly value, or general social or literary value.

- The Warden may not establish an excluded list of publications. This means the Warden shall review the individual publication prior to the rejection of that publication. Rejection of several issues of a subscription publication is not sufficient reason to reject the subscription publication in its entirety.

Where a publication is found unacceptable, the Warden shall promptly advise the inmate in writing of the decision and the reasons for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable. Inmates/Offenders may appeal any denial of publications. In questionable cases, institution staff should consult with legal staff prison to and denial.

| POLICY OF | POLICY NUMBER | PAGE NUMBER |
|---|---|---|
| STATE OF DELAWARE | 4.5 | 5 of 5 |
| DEPARTMENT OF CORRECTION | RELATED ACA STANDARDS: | |
| CHAPTER: 4 Decision-Making to Offenders | SUBJECT: Policy for Incoming Publications | |

The Warden shall provide the publisher or sender of an unacceptable publication a copy of the rejection letter. The Warden shall advise the publisher or sender that he may obtain an independent review of the rejection by writing to the (Bureau Chief of Prisons or Bureau Chief of Community Correction) within 20 days of receipt of the rejection letter. The Warden shall return the rejected publication to the publisher or sender of the material unless the inmate indicates intent to file a grievance, in which case the Warden shall retain the rejected material at the institution for review. If the rejection is sustained upon review, the rejected publication shall be returned to the publisher when any appeal or other legal use is completed.

See notification to Inmate and Publisher/Sender of Rejected Publication (Attachment A) for a sample notification to inmate and publisher/sender.

- The Warden must retain the rejected publication for 20 days from the date that the inmate is sent written notification of the rejection. **SHU LAW LIBRARY**

- This 20-day period is to allow the inmate the opportunity to file a grievance. If the inmate does not file a grievance within 20-days, the rejected publication shall be returned to the publisher.

- If the inmate does file a grievance, the Warden must retain the rejected publication at the institution.

The Warden may set limits locally (for fire, sanitation, housekeeping reasons or classification-based reasons on the number or volume of publications an inmate may receive or retain in his quarters.

Attachment A

NOTIFICATION TO INMATE AND PUBLISHER/SENDER OF **REJECTED**
PUBLICATION (TO BE USED WHEN REJECTING A PUBLICATION UNDER THIS
POLICY)

**SHU LAW LIBRARY**

Inmate: _____

S.B.I. # Number: _____

Institution: _____

RE: _____    Issue: _____

The above named publication/material from [publisher/sender name ] has been rejected
in accordance with the Department of Correction Policy on incoming publications, which
provides in part:

> **A publication may be rejected only if it is determined detrimental to
> the security, good order, or discipline of the institution or if it might
> facilitate criminal activity.**

The above named publication has been rejected because [provide reference to the specific
article(s) or material (s) considered objectionable and the reason (s) for the decision to
reject].

A copy of this notification has been sent to the publisher/sender who may obtain an
independent review of this rejection by writing to Bureau Chief [name, address] within
twenty (20) days of receipt of that copy.

**SHU LAW LIBRARY**

_____    _____
        Warden                          Date

cc: [publisher/sender name and address]

# EXHIBIT 3

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2008 MAR 18  AM 9: 48

## INMATE HOUSING RULES FOR MAXIMUM SECURITY

4. **CLOTHING**

   a. One pair sneakers – white (issue or commissary)

   b. Two orange uniforms, coveralls or shirt and trousers (issue). Workers will be issued 1 additional uniform marked with "DOC" on back of shirt and on right leg of trousers.

   c. Six T-shirts – white and with sleeves (issue or commissary)

   d. Six undershorts – white (issue or commissary)

   e. Six pair socks – white (issue or commissary)

   f. Two sweatshirts – orange/white (issue)

   g. One knit cap –white (issue or commissary)

   h. Three handkerchiefs – white (commissary)

   i. One winter coat (issue) as needed for transport only

   j. One pair shower shoes or flip-flops (commissary)

   k. One pair pajamas (commissary)

   l. Two pair of gym shorts – (commissary)

   m. Two thermal tops and/or bottoms – white (commissary)

   n. One bathrobe (commissary)

5. **PERSONAL ITEMS**

   a. Two religious headwear – must pertain to the same faith and must be verified. (commissary)

   b. Two personal or library magazines, three library or personal reading books, (which may include Bible and/or Koran), and one newspaper that does not

5

## INMATE HOUSING RULES FOR MAXIMUM SECURITY

promote illegal activity. These items must be purchased directly from the publisher and/or bookstore and must be mailed directly from the publisher or bookstore prepaid. This does not include the approved education and treatment material described in Item C. These materials must be kept in an orderly manner. Sexually explicit material is not permitted at the Delaware Correctional Center. Sexually explicit material is any pictorial or written depiction of actual or simulated sexual acts including sexual intercourse, oral sex, and/or masturbation; any pictorial or written demonstration, depiction, or symbolization of nudity, frontal or otherwise; and any promotion of sexual activity of any manner. All sexually explicit items are considered contraband except publications containing nudity illustrative of medical, educational, and anthropological content, and material of a news information type such as publications covering activities of gay or religious groups. To be permitted into the Delaware Correctional Center, the sexually explicit material must have scholarly value or general social or literary value. No distinction is made between depiction of heterosexual or homosexual activity in enforcing this policy. As with all items not permitted, when a sexually explicit publication, picture, or other item is received at DCC through the mail, a notice will be sent to the inmate and the sender notifying them that the item is not permitted into the Institution. The inmate will have five days to notify the Institution Mail Room of how to dispose of the item (donate to a charitable organization, mail out of Institution at inmate's expense, to appeal the Mail Room rejection

## INMATE HOUSING RULES FOR MAXIMUM SECURITY

to the Support Services Manager). Failure to notify the Mail Room of the requested method of disposition within five days will result in the item being disposed of according to the institutional operating procedures.

c. The Treatment and Education Departments will maintain a list of the educational material required for the particular classes/programs to which an inmate is assigned. The list will include timeframes specific to the class/program in which the named inmate is participating with an expiration date and whether the material must be returned to the Education and/or Treatment Departments. The list will be updated on computer-shared files. If the material is not required to be returned to the Education and/or Treatment Departments, the inmate must either send the material out of the Institution or make the adjustment to his personal property to ensure compliance with the inmate housing rules.

d. Up to 24 envelopes (commissary).

e. Up to two writing tablets (commissary).

f. Legal materials regarding active personal litigation. Inmates will not have in their possession legal work belonging to other inmates. Legal materials belonging to other inmates will be returned to the inmate named in the legal material after the disciplinary process has been completed.

g. Personal mail - 12 letters.

h. Twelve snapshot photographs (with no hard backing) not to exceed 8" x 10", if not contained in an allowable photo album. If contained in an allowable

EXHIBIT 4

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2008 MAR 18  AM 9:48




*Duplicate*

# STATE OF DELAWARE
## DEPARTMENT OF CORRECTION
## DELAWARE CORRECTIONAL CENTER
### 1181 Paddock Road
### SMYRNA, DELAWARE 19977
### Telephone: (302) 653-9261

Inmate/ Housing:    **Luis Reyes/18-L-A-12**          S.B.I. # Number: **00275145**

RE:    W The Art Issue                              Issue:  November 2007

The above named publication from:

> W
> P.O. Box 37711
> Boone, IA 50037-2711

has been rejected in accordance with the Department of Correction Policy on incoming publications, which provides in part:

> **A publication may be rejected only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity.**

The above named publication has been rejected because it contains pictures that are sexually explicit / obscene in nature.

You have the option to appeal this rejection to the Office of the Warden. This appeal must be completed and submitted via the enclosed Publication Rejection Appeal Form within twenty (20) days of receipt of this correspondence. Additionally, the Appeal Form must be forwarded to the Warden's Office in the enclosed envelope.

A copy of this notification has been sent to the sender who may obtain an independent review of this rejection by writing to Bureau Chief Rick Kearney, 245 McKee Road, Dover, DE 19904 within twenty (20) days of receipt of that copy.

_____                    ___11/14/07___
Support Services Officer                      Date

cc:    Chief Rick Kearney
       File

       W
       P.O. Box 37711
       Boone, IA 50037-2711



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELAWARE CORRECTIONAL CENTER
### OFFICE OF THE WARDEN
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 653-2855

### MEMORANDUM

To:     Inmate Reyes, Luis / 18-L-A-12

From:   Perry Phelps, Warden

Date:   1/30/2008

RE:     Publication Appeal

This will acknowledge receipt of the Rejected Publication Appeal Form you submitted on (12/23/2007), regarding the denial of the publication "W the art issue" due to a violation of the Department of Correction Policy 4.5 regarding incoming publications.

You should be advised that the rejected material is sexually explicit and/or obscene and is, therefore, not conducive to the goal of rehabilitation. Additionally, material of this type also presents risks to institutional safety and security.

Based on these factors, the appeal is denied.

cc.   Deputy Warden Pierce
       Major Holman
       Major Scarborough
       Support Services Manager Smith
       Support Services Officer Powell
       File



### STATE OF DELAWARE
### DEPARTMENT OF CORRECTION
## DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261

Inmate/ Housing:    Ortiz, Juan/18-L-A-6-S              S.B.I. # Number:**00194247**

RE:    **American Curves**                          Issue:  **December 2007**

The above named publication from:

American Curves Magazine
P.O. Box 446
Mt. Morris, IL 64054-9860

has been rejected in accordance with the Department of Correction Policy on incoming publications, which provides in part:

> **A publication may be rejected only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity.**

The above named publication has been rejected because it contains pictures that are sexually explicit / obscene in nature.

You have the option to appeal this rejection to the Office of the Warden. This appeal must be completed and submitted via the enclosed Publication Rejection Appeal Form within twenty (20) days of receipt of this correspondence. Additionally, the Appeal Form must be forwarded to the Warden's Office in the enclosed envelope.

A copy of this notification has been sent to the sender who may obtain an independent review of this rejection by writing to Bureau Chief Rick Kearney, 245 McKee Road, Dover, DE 19904 within twenty (20) days of receipt of that copy.

_____                    _____11/27/07_____
Support Services Officer                          Date

cc:    Chief Rick Kearney
        File

American Curves Magazine
P.O. Box 446
Mt. Morris, IL 64054-9860



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELAWARE CORRECTIONAL CENTER
**OFFICE OF THE WARDEN**
1181 Paddock Road
SMYRNA, DELAWARE  19977
Telephone:  (302) 653-9261
Fax:  (302) 659-6667

## MEMORANDUM

To:     Inmate Juan Ortiz, SBI No. 194247

From:  Acting Warden Burris *Epewue*

Date:   December 12, 2007

RE:     Publication Appeal

_____

This will acknowledge receipt of the Rejected Publication Appeal Form you submitted on November 28, 2007, regarding the denial of the publication "American Curves—December 2007" due to a violation of the Department of Correction Policy 4.5 regarding incoming publications.

You should be advised that the rejected material is sexually explicit and/or obscene and is, therefore, not conducive to the goal of rehabilitation.  Additionally, material of this type also presents risks to institutional safety and security.

Based on these factors, the appeal is denied.

Cc      Deputy Warden Pierce
        Major Holman
        Major Scarborough
        Support Services Manager Smith
        Support Services Officer Powell
        File



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
**DELAWARE CORRECTIONAL CENTER**
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261

Inmate/ Housing:    **Robert Gattis 18-A-L-11**         S.B.I. #: **00188752**

RE:    Playboy                                    Issue:  January 2008

The above named publication from:

Ninth Street Book Shop
104 W. 9th Street
Wilmington, DE  19801

has been rejected in accordance with the Department of Correction Policy on incoming publications, which provides in part:

> **A publication may be rejected only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity.**

The above named publication has been rejected because it contains pictures that are sexually explicit / obscene in nature.

You have the option to appeal this rejection to the Office of the Warden. This appeal must be completed and submitted via the enclosed Publication Rejection Appeal Form within twenty (20) days of receipt of this correspondence. Additionally, the Appeal Form must be forwarded to the Warden's Office in the enclosed envelope.

A copy of this notification has been sent to the sender who may obtain an independent review of this rejection by writing to Bureau Chief Rick Kearney, 245 McKee Road, Dover, DE 19904 within twenty (20) days of receipt of that copy.

_____        _2/1/08_____
Support Services Officer                        Date

cc:    Chief Rick Kearney
       File

Ninth Street Book Shop
104 W. 9th Street
Wilmington, DE  19801



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
## OFFICE OF THE WARDEN
DELAWARE CORRECTIONAL CENTER
1181 Paddock Road
SMYRNA, DELAWARE 19977
Telephone: (302) 653-9261
Fax: (302) 659-2855

<u>Perry Phelps</u>
Warden

## MEMORANDUM

TO:    Inmate Robert Gattis SBI# 188752 SHU 18 AL11

FROM:    Perry Phelps, Warden 

DATE:    February 13, 2008

RE:    Publication Appeal

This will acknowledge receipt of the Rejected Publication Appeal Form you submitted on February 4, 2008, regarding the denial of the publication "Playboy" (January 2008) due to a violation of the Department of Correction Policy 4.5 regarding incoming publications.

You should be advised that the rejected material is sexually explicit and/or obscene and is, therefore, not conductive to the goal of rehabilitation. Additionally, material of this type also presents risks to institutional safety and security.

Based on these factors, the appeal is denied.

PP/dc
cc:    Deputy Warden Pierce
       Major Holman
       Major Scarborough
       Support Services Manager Smith
       Support Services Office Powell
       File

# EXHIBIT 5

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE
2008 MAR 18 AM 9:48



STATE OF DELAWARE
DEPARTMENT OF CORRECTION
DELAWARE CORRECTIONAL CENTER
Smyrna Landing Road
SMYRNA, DELAWARE  19977
Telephone:  (302) 653-9261
Fax:  (302) 653-2855

## MEMORANDUM

**TO:**  **Bldg 18 Staff**

**FROM:**  **S/Lt. Karen Hawkins**

**DATE:**  **October 3, 2007**

**RE :**  **A-Tier Recreation**

Due to the increase in offenders on the tier and the need to accomplish recreation in accordance with procedures, I am authorizing the use of the inside yards in addition to utilizing the outside yard when running recreation. This will also pertain to recreation periods that are completed on Saturdays. Please disregard previous memo dated 6/8/07.


Thank you,
S/Lt. Karen Hawkins

EXHIBIT 6

Recreation Schedule
Secure Housing Unit
Building #18
A-Tier

| Rec Times | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| 830-915 | Upper Cells | Lower Cells | Upper Cells | Lower Cells | Upper Cells | Lower Cells | |
| 915-1000 | 1-6 | 1-6 | 1-6 | 1-6 | 1-6 | 1-6 | |
| 1000-1045 | | | | | | | |
| 1800-1845 | Upper Cells | Lower Cells | Upper Cells | Lower Cells | Upper Cells | Lower Cells | |
| 1845-1930 | 7-12 | 7-12 | 7-12 | 7-12 | 7-12 | 7-12 | |
| 1930-2015 | | | | | | | |

Cells 1-6 and 7-12 alternate monthly between morning and evening recreation on the first Monday of each month.

Saturday recreation was conducted from 0830 hours until completed because it evolved the entire tier and some inmates would forgo recreation since they either received it on Friday or would on Sunday.

# CERTIFICATE OF SERVICE

I, Robert Gattis, hereby certify that on this
day of                        I served the within upon
the following by United States mail postage paid.


Delaware Department of Justice
820 North French Street, 7th Fl.
Wilmington, DE 19801


Dated: March 10, 2008         _____

Robert Gattis
SBI # 188752 - Bldg. 18
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977