## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ROBERT GATTIS,                          :
                                        :
          Plaintiff,                    :
                                        :
     v.                                 :          Civ. No. 08-154-LPS
                                        :
WARDEN PERRY PHELPS, et al.,            :
                                        :
          Defendants.                   :

Robert Gattis, James T. Vaughn Correctional Center, Smyrna, Delaware, Pro Se Plaintiff.

Joseph Clement Handlon, Deputy Attorney General, Delaware Department of Justice,
Wilmington, Delaware.  Counsel for Defendants.

## <u>MEMORANDUM OPINION</u>

March 19, 2012
Wilmington, Delaware

**STARK, U.S. District Judge:**

## I.  **INTRODUCTION**

Plaintiff Robert Gattis ("Plaintiff") filed this action alleging constitutional violations

pursuant to 42 U.S.C. § 1983. Presently before the Court are Defendants' Motion for Leave to

Amend Answer[1] and Motion for Summary Judgment as well as Plaintiff's Request for Counsel

and Motion for an Extension of Time to File a Response to Defendants' Motion for Summary

Judgment.[2] (D.I. 51, 52, 54, 57) For the reasons that follow, the Court will grant Defendants'

motions, will deny as moot Plaintiff's Request for Counsel, and will grant Plaintiff's Motion for

an Extension of Time to File a Response.

## II.  **BACKGROUND**

Plaintiff's Complaint and Amendments allege: (1) that Department of Corrections

("DOC") Policy 4.5 ("Policy 4.5") prohibiting receipt of sexually explicit materials violates his

rights under the First and Fourteenth Amendment (D.I. 2); (2) that Plaintiff's due process post-

deprivation rights were violated when a January 2008 issue of Playboy Magazine was

prematurely returned to the sender (D.I. 14); and (3) unlawful conditions of confinement for

inmates housed on death row (D.I. 29).[3]

At the time he filed his Complaint, Plaintiff was a death-row inmate incarcerated at the

James T. Vaughn Correctional Center ("VCC") in Smyrna, Delaware. On January 17, 2012,

Plaintiff's death sentence was commuted to life in prison without the possibility of parole by the

---

[1]The motion is incorrectly docketed as a Motion to Amend/Correct Response to Motion.

[2]The Court will grant the motion and will consider Plaintiff's Response at docket item 58.

[3]Other claims were dismissed as frivolous on July 1, 2008. (D.I. 17)

1

Governor of the State of Delaware, following the Delaware Board of Pardons' recommendation to commute the death sentence. (D.I. 61 Ex. A) As a condition of the commutation, Plaintiff waived all legal challenges to his conviction for the May 1990 murder of his former girlfriend and agreed to spend the rest of his life in the maximum security unit at the VCC. *Id.*

On February 10, 2012, the Court ordered the parties to advise whether Plaintiff's commutation of the death sentence to life imprisonment and confinement to the maximum security unit changed either the posture of the case or the relief he sought. (D.I. 60) Plaintiff now indicates that three claims remain pending, while Defendants state that just two claims remaining pending. Plaintiff concedes that the two conditions of confinement claims referred to by Defendants are moot.[4] These claims are found in the original Complaint at docket item 2 and the Amended Complaint at docket item 29.

Plaintiff contends, however, that one issue remains: whether Defendants violated his post-deprivation rights ("post-deprivation claim") under the Fourteenth Amendment when they failed to retain a rejected publication (i.e., Playboy magazine) as required by Policy 4.5. This claim is found in the Amended Complaint at docket item 14. Plaintiff states that "neither the predicate facts, nor applicable section of DOC Policy 4.5, necessitate [that] any specific conditions of confinement exist in order for this claim to proceed." (*Id.* at 62) Plaintiff further states that Policy 4.5 remains relevant "irrespective of the publication's content once the requisite notice is provided to the warden." (*Id.*)

---

[4]The Court will dismiss as moot the conditions of confinement claims found in the Complaint and Amended Complaint. (*See* D.I. 2, 29)

Policy 4.5 took effect on March 14, 2007.[5] (D.I. 55 Ex. A)  It is applicable to all incoming publications at DOC institutions and to all "DOC Staff, Contractors, Volunteers, Offenders and/or Inmates under DOC's custody." (*Id.*)  Policy 4.5 provides that the warden or a designee may reject an incoming publication if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity. (*Id.*)  If a publication is found unacceptable, the Warden "shall promptly advise the inmate in writing of the decision and the reasons for it," such notice must contain reference to the specific article or material considered objectionable. (*Id.*)

An inmate may appeal the rejection of any publication. (*Id.*)  In addition, Policy 4.5 requires that the Warden provide a copy of the rejection letter to the sender or publisher of an unacceptable publication and give the sender an option for independent review of the rejection (by writing to the Bureau Chief of Prisons or Bureau Chief of Community Corrections within twenty days of receipt of the rejection letter). (*Id.*)  The twenty day period is to allow the inmate an opportunity to file a grievance. (*Id.*)

The Warden is to return the rejected publication to the publisher or sender of the material, unless the inmate indicates his or her intent to file a grievance. (*Id.*)  If the inmate initiates such a grievance and the Warden's rejection is thereafter sustained, the rejected publication will then be returned to the publisher or sender when any appeal or other legal use is completed. (*Id.*)

Plaintiff received a Playboy Magazine from the Ninth Street Book Store ("the book store") located in Wilmington, Delaware.  On February 1, 2008, Powell provided Plaintiff the

---

[5]Defendants advise that the policy was revised subsequent to March 14, 2007, but the provisions relevant to the instant case have not changed in any significant respect.

notice required by Policy 4.5 and rejected the January 2008 issue of the Playboy magazine because it contained pictures that were sexually explicit and obscene in nature. (*See* D.I. 56 Exs. 1, B)  The book store was provided a copy of the rejection letter sent to Plaintiff. (*Id.* at Ex. C) Plaintiff appealed the rejection, and his appeal was denied. (*Id.* at Exs. D, E ) In denying the appeal on February 13, 2008, Phelps stated that the rejected material was sexually explicit and/or obscene, was not conductive to the goal of rehabilitation, and presented risks to institutional safety and security. (*Id.* at Ex. E)  The book store did not seek an independent review of the rejected magazine and, following denial of Plaintiff's appeal, the magazine was returned to the book store on February 15, 2008. (*Id.* at Ex. G)

On April 11, 2008 Plaintiff filed a replevin action in the Delaware Justice of the Peace Court for return of the Playboy magazine or the $6.99 value of the magazine. (D.I. 14 ¶ 7)  The Justice of the Peace court found the claim factually frivolous pursuant to 10 Del. C. § 8803(b) and dismissed the action with prejudice. (*Id.* at ¶ 8)

### III.   **LEGAL STANDARDS**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–61 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c) (1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson*, 477 U.S. at 247-49; *see also Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

## IV.   **DISCUSSION**

Defendants move for summary judgment on the grounds that the Playboy magazine was

5

rejected in accordance with Policy 4.5, and there was no violation of Plaintiff's constitutional

rights with respect to the rejection. They argue there was no premature rejection because

Plaintiff lost his appeal, and the book store did not seek an independent review. Plaintiff

opposes the motion on the grounds that Defendants violated his post-deprivation rights under the

Fourteenth Amendment when they failed to retain the rejected publication for twenty days in

accordance with Policy 4.5.

Plaintiff availed himself of an internal DOC appeal when his magazine was rejected. In

addition, he unsuccessfully sought relief through a State court proceeding. Here, adequate

remedies were available to Plaintiff. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410,

422 (3d Cir. 2000) (holding that prison's grievance program and internal review provided

adequate post-deprivation remedy to satisfy due process). He also had available to him the

option of filing a common law claim for conversion of property. *See Austin v. Lehman*, 893

F.Supp. 448, 454 (E.D. Pa. 1995) (both inmate grievance procedure and state tort law action

constituted adequate post-deprivation remedies).

It is immaterial that the magazine was not retained for the entire twenty day period. The

magazine was retained during the pendency of Plaintiff's internal appeal. Even if the magazine

should have been retained in anticipation that the book store would appeal, the book store did not

exercise its right to do so. In addition, Plaintiff has no standing to complain of actions that the

book store might have taken. Because state law provides post deprivation remedies in the form

of internal appeals for rejected publications and State tort law claim of conversion, Plaintiff

cannot state a procedural due process claim as a matter of law. *See Hudson v. Palmer*, 468 U.S.

517, 533 (1984) (alleging deprivation of inmate property by prison officials fails to state

6

cognizable due process claim if prisoner has adequate post-deprivation state remedy).

Finally, Plaintiff's complaint that Defendants failed to follow the letter of Policy 4.5 does not raise a claim of constitutional significance, and, thus, is not cognizable under section 1983. "In a suit under § 1983 the plaintiff must show a violation of the Constitution or laws of the United States, not just a violation of state law. The two are not the same." *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 434 (7th Cir. 1986)); *see also Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *United States v. Jiles*, 658 F.2d 194, 200 (3d Cir. 1981) ("The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension."); *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("[T]here is no federal constitutional liberty interest in having state officers follow state law or prison officials follow prison regulations . . . ."); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation.").

Summary judgment is appropriate as a matter of law. For the above reasons, the Court will grant Defendants' Motion for Summary Judgment.

## V.   **CONCLUSION**

For the above reasons, the Court will grant Defendants' Motion for Leave to Amend Answer; deny as moot Plaintiff's Request for Counsel; dismiss as moot the conditions of confinement claims; grant Defendants' Motion for Summary Judgment on the post-deprivation due process issue; and grant Plaintiff's Motion for Extension of Time to File a Response, having considered his Response.

An appropriate Order follows.

8